DONGELL LAWRENCE FINNEY LLP
Richard A. Dongell (SBN 128083)
  rdongell@dlflawyers.com
Thomas F. Vandenburg (SBN 163446)
  tvandenburg@dlflawyers.com
Paul D. Rasmussen (SBN 201680)
  prasmussen@dlflawyers.com
707 Wilshire Boulevard, 45th Floor
Los Angeles, CA  90017-3609
Telephone:  (213) 943-6100
Facsimile:   (213) 943-6101

Attorneys for Plaintiff
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY

FILED

2007 DEC 19  PM 12: 01

CLERK US. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA          **BY FAX**

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>       v.<br><br>Heilig-Meyers Company, a Virginia Corporation; McMahan Furniture Company, a California Corporation; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.:<br><br>**'07 CV 2377 JLS-POR**<br><br>COMPLAINT FOR:<br><br>1. CERCLA COST RECOVERY;<br>2. RECOVERY UNDER THE CALIFORNIA HAZARDOUS SUBSTANCE ACCOUNT ACT (H&S CODE § 25300 ET. SEQ.);<br>3. EQUITABLE INDEMNITY / CONTRIBUTION; AND<br>4. CONTINUING NUISANCE.<br><br>DEMAND FOR JURY TRIAL |

Plaintiff AMERICAN SPECIALTY LINES INSURANCE

COMPANY hereby alleges against Defendants and each of them, as follows:

## PARTIES

1.     Plaintiff AMERICAN SPECIALTY LINES INSURANCE

COMPANY ("Plaintiff") is an Alaskan corporation with its principal place of

business in the State of New York.  Plaintiff is, and at all relevant times herein

1

**COMPLAINT**

1  was, a corporation licensed to provide environmental insurance. Plaintiff is
2  contractually and equitably subrogated to the rights of Carter Reese & Associates
3  as more fully set forth herein.

4      2.     Plaintiff is informed and believes, and thereon alleges, that Defendant
5  Heilig-Meyers Company is a Virginia corporation licensed to do business, and
6  doing business, in the State of California.

7      3.     Plaintiff is informed and believes, and thereon alleges, that Defendant
8  McMahan Furniture Company is a California corporation licensed to do business,
9  and doing business, in the State of California.

10     4.     Carter Reese & Associates ("Carter Reese") is a partnership
11 authorized to do business, and doing business, in the State of California.

12     5.     The true names of DOES 1 through 10, inclusive, whether individual,
13 corporate, associate or otherwise, are presently unknown to Plaintiff, and Plaintiff
14 sues said defendants by said fictitious names. When Plaintiff ascertains the true
15 names and capacities of said defendants, Plaintiff will ask leave of court to amend
16 this Complaint by setting forth the true names. Plaintiff is informed and believes,
17 and on the basis of such information and belief alleges, that DOES 1 through 10
18 participated in some or all of the acts and omissions alleged herein, and are
19 responsible and liable to Plaintiff for the damages and other relief sought herein.

20     6.     Plaintiff is informed and believes, and based thereon alleges, that at
21 all relevant times mentioned in this Complaint, each of the Defendants was the
22 agent, owner, principal, representative, employee, partner, affiliate, subsidiary,
23 predecessor in interest, successor in interest, or joint venturer of each of the
24 remaining Defendants and, at all relevant times, in doing the things hereinabove
25 and hereinafter alleged, was acting within the course and scope of such agency,
26 representation, employment, partnership, successorship, joint venture, or other
27 relationship, as more particularly alleged. The term "Defendants" when used in
28

1 | this Complaint refers to all defendants, and also includes each defendant
2 | individually.

3 | ## JURISDICTION AND VENUE

4 |     7.    This Court has original jurisdiction over this action pursuant to
5 | Section 113(b) of the Comprehensive Environmental Response, Compensation and
6 | Liability Act 1980 (CERCLA), 42 U.S.C.S. § 9613(b).

7 |     8.    This Court has subject matter jurisdiction over Plaintiff's remaining
8 | claims for relief brought under state law by virtue of its statutorily-provided
9 | supplemental jurisdiction, 28 U.S.C. § 1367, and under the doctrine of pendent
10 | jurisdiction set forth in United Mine Worker v. Gibbs 383 U.S. 715, 86 S. Ct.
11 | 1130. The claims under state law arise from the same common nucleus of
12 | operative facts as the claims under federal law. The state law and federal law
13 | claims are so intertwined that it is appropriate for this Court to exercise its
14 | jurisdiction over the state law claims asserted herein.

15 |     9.    Venue is proper in this District in that Plaintiff's claims for relief
16 | arose in this District.

17 | ## GENERAL ALLEGATIONS

18 |     10.    Prior to January 2003, Plaintiff and Carter Reese entered into a
19 | Pollution Legal Liability Select Policy, Policy No. PLS 3778106 ("Policy
20 | Agreement"), which was effective from January 31, 2003 until January 31, 2008.
21 | Under the terms of the Policy Agreement, Plaintiff was obligated to reimburse
22 | Carter Reese for payments made in connection with environmental contamination /
23 | pollution found on 2930 El Cajon Boulevard, San Diego, CA 92104 ("Subject
24 | Property") up to one million dollars ($1,000,000). A true and correct copy of the
25 | Policy Agreement is attached hereto as Exhibit A. Under the terms of the Policy
26 | Agreement, Plaintiff was and is subrogated to the rights of Carter Reese, as
27 | follows:
28 | ///

**COMPLAINT**

"In the event of any payment under this Policy, the Company shall be subrogated to all [Carter Reese's] rights of recovery therefore against any person or organization and [Carter Reese] shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assignment of [Carter Reese's] rights against any person or organization who cause Pollution Conditions on account of which the Company made any payment under this Policy. [Carter Reese] shall do nothing to prejudice the Company's rights under this paragraph subsequent to Loss." See Policy Agreement Section VI Subsection B.

11.     On or about April 16, 2002, Carter Reese entered into a contract to purchase the Subject Property from Wells Fargo Bank Minnesota. Carter Reese intended to develop the Subject Property into a for profit housing complex.

12.     During excavation of the Subject Property, Carter Reese discovered hazardous substances in the soil, including but not limited to, lead contamination. In response to this contamination, Carter Reese contracted with its environmental consultants to have the hazardous substances removed from the Subject Property.

13.     Remediation of the Subject Property was completed on or around March of 2005, which was within the past three (3) years.

14.     After Carter Reese had paid for all of the costs associated with the removal / remediation of the contaminated soil, Carter Reese demanded reimbursement from Plaintiff based on the Policy Agreement.

15.     Pursuant to the Policy Agreement, Plaintiff reimbursed Carter Reese for $288,281, the amounts that Carter Reese expended in connection with the remediation of the contamination of the Subject Property.

16.     Plaintiff is informed and believes, and thereon alleges, that prior to 2002, Defendants held an ownership interest in and/or operated on the Subject Property for some period of time.

17.    Plaintiff is informed and believes, and thereon alleges, that during their respective periods of ownership, operation of, or activities at the Subject Property, Defendants, and each of them, conducted activities on the Subject Property which involved the transport, use, storage, treatment, and/or disposal of hazardous substances as defined in CERCLA § 101(14), 42 U.S.C.S. § 9601(14).

18.    Plaintiff is further informed and believes, and thereon alleges, that during their respective periods of ownership, operation of, or activities at the Subject Property, Defendants, and each of them, caused or allowed such hazardous substances to be released to the environment, within the meaning of CERCLA § 101(22), 42 U.S.C.S. § 9601(22), or allowed such hazardous substances to exist in such a state that there existed a threat of such release.

19.    Plaintiff is informed and believes, and thereon alleges, that Carter Reese had no connection with the Subject Property until 2002. Thereafter, Carter Reese began development of the Subject Property into a for profit housing complex. At the time Carter Reese purchased the Subject Property, Plaintiff is informed and believes that Carter Reese had no knowledge of the contamination problem on the Subject Property. Plaintiff is informed and believes that such contamination was not discovered by and not apparent to Carter Reese or to Plaintiff until September and October of 2004.

20.    Because of the contamination, Carter Reese was forced to retain an environmental consultant for the purpose of remediating the contamination from the Subject Property. As a result, Carter Reese incurred substantial response costs in addressing, evaluating, and remediating this contamination, for which Plaintiff has reimbursed Carter Reese.

///
///
///
///

<u>FIRST CAUSE OF ACTION</u>

(For Recovery of Response Costs Pursuant to CERCLA § 107(a))

(Against All Defendants and Does 1 through 10)

21.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 20 as though fully set forth herein.

22.    Each of the Defendants is a "person" as defined in CERCLA § 101(21), 42 U.S.C.S. § 9601(21).

23.    The Subject Property is a "facility" as defined in CERCLA § 101(9), 42 U.S.C.S. § 9601(9).  Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, were "persons" who "owned" and/or "operated" the Subject Property at the time of the disposal of hazardous substances thereupon, and/or at the time that hazardous substances were released into the environment at the Subject Property.

24.    Plaintiff is further informed and believes, and thereon alleges, that Defendants, and each of them, released and/or arranged for the disposal or treatment, or transport for disposal or treatment, of hazardous substances at or upon the Subject Property.

25.    Plaintiff is informed and believes, and thereon alleges, that the Defendants, and each of them, proximately caused releases or threatened releases of hazardous substances into and/or from the Subject Property.

26.    As a direct and proximate result of the actions of Defendants, and each of them, as alleged herein, Plaintiff has reimbursed Carter Reese for Carter Reese's response costs consistent with the national contingency plan in responding to the releases or threatened release of hazardous substances at the Subject Property within the meaning of CERCLA § 107(a), 42 U.S.C.S. § 9607(a).

27.    Pursuant to CERCLA § 113(l), 42 U.S.C.S. § 9613(l), a copy of this complaint was provided to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency.

1    28.    Based thereon, Plaintiff is entitled to an award of response costs and

2  other appropriate damages according to proof at trial.

3                              SECOND CAUSE OF ACTION

4    (For Response Costs Pursuant to California Hazardous Substances Account Act)

5                    (Against All Defendants and DOES 1 through 10)

6    29.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

7  through 28 as though fully set forth herein.

8    30.    Each of the Defendants is a "responsible party" and/or "liable person"

9  within the meaning of the California Hazardous Substances Account Act

10  ("HSAA"), Cal. Health & Safety Code § 25323.5(a)(1), and Section 107(a) of

11  CERCLA, 42 U.S.C.S. § 9607(a).

12    31.    Plaintiff is a person who has reimbursed Carter Reese who has

13  incurred removal and/or remedial action costs under HSAA and CERCLA.

14    32.    Pursuant to California Health & Safety Code § 25363(e), a copy of

15  this complaint was provided to the Department of Toxic Control Substances.

16    33.    Plaintiff is entitled to and hereby seeks contribution and/or indemnity

17  pursuant to Cal. Health & Safety Code § 25363(e) from Defendants for their

18  equitable share of removal and/or remedial action costs that Plaintiff has incurred

19  at the Subject Property.

20                              THIRD CAUSE OF ACTION

21                              (For Equitable Indemnity)

22                    (Against All Defendants and DOES 1 through 10)

23    34.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

24  through 33 as though fully set forth herein.

25    35.    The costs incurred by Carter Reese, which were reimbursed by

26  Plaintiff, to investigate, remove, remediate or otherwise respond to the release or

27  threatened release of hazardous substances at the Subject Property are entirely or

28  substantially the result of the conduct of Defendants, and each of them.  Therefore,

7

**COMPLAINT**

1  Plaintiff is entitled to complete indemnity from Defendants for such expenses
2  pursuant to the doctrine of equitable indemnity.

3                              FOURTH CAUSE OF ACTION

4                                (For Continuing Nuisance)

5                         (Against All Defendants and DOES 1 through 10)

6       36.   Plaintiff hereby re-alleges and incorporates by reference paragraphs 1
7  through 35 as though fully set forth herein.

8       37.   Plaintiff seeks economic and property damages proximately caused by
9  the acts and omissions of Defendants, and each of them, resulting in the
10 environmental contamination at the Subject Property.  Plaintiff seeks such damages
11 only to the extent any are not recoverable or available as response costs under
12 CERCLA, and are not barred by the provisions of CERCLA, and do not conflict or
13 interfere with the accomplishment and execution of CERCLA's objectives.

14      38.   Plaintiff is informed and believes, and based thereon alleges, that at
15 all times during Defendants' respective ownerships of the facilities located on the
16 Subject Property, Defendants used those facilities in violation of the law and public
17 and private safety by improperly releasing, discharging, handling, and disposing of
18 hazardous substances, resulting in the contamination of the Subject Property.

19      39.   Plaintiff is informed and believes, and based thereon alleges, that the
20 contamination at the Subject Property caused by the tortious and unlawful disposal
21 and release of hazardous substances, constitutes a continuing nuisance under
22 California Civil Code Section 3479 because the nuisance was abatable.

23      40.   As a proximate result of the nuisance created by Defendants, and each
24 of them, Plaintiff has incurred special damages and costs alleged above, through
25 the reimbursement of Carter Reese's response costs, which entitle Plaintiff to
26 pursue this nuisance claim.

27 ///

28 ///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    Monetary damages in an amount no less than $288,281, which is the amount the Plaintiff reimbursed Carter Reese for;

2.    Costs of suit;

3.    Reasonable attorneys' fees to the extent permitted by law, including interest;

4.    Prejudgment interest on all damages awarded to Plaintiff, in an amount to be determined in accordance with California Civil Code § 3291; and

5.    For such other and further relief as the Court deems just and proper.


DATED:  December 19, 2007          DONGELL LAWRENCE FINNEY LLP


                                   By: _____
                                        Thomas F. Vandenburg
                                   Attorneys for Plaintiff
                                   AIG Domestic Claims, Inc.

**COMPLAINT**

EXHIBIT A

# EXHIBIT "A"

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

175 Water Street, Twelfth Floor
New York, New York 10038

## POLLUTION LEGAL LIABILITY SELECT® POLICY

**THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE READ CAREFULLY.**

### DECLARATIONS

**POLICY NUMBER:**   PLS  3778106

**Item 1. NAMED INSURED:**   CARTER REESE & ASSOCIATES

**ADDRESS:**   3638 5TH AVENUE, SUITE 300
SAN DIEGO, CA 92103

**Item 2. POLICY PERIOD:   FROM** January 31, 2003   **TO** January 31, 2008
12:01 AM Standard Time at the Address of the Named Insured shown above

**Item 3. COVERAGES AND COVERAGE SECTION LIMITS AND DEDUCTIBLES:**

This Policy includes only those Coverages as stated in Section I of the Policy for which deductibles and limits of liability appear below. If no deductible or limits of liability appears for a Coverage, that Coverage does not apply.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|:---:|:---:|:---:|:---:|
| A | $10,000 | $1,000,000 | $1,000,000 |
| B | | | |
| C | $10,000 | $1,000,000 | $1,000,000 |
| D | $10,000 | $1,000,000 | $1,000,000 |
| E | | | |
| F | $10,000 | $1,000,000 | $1,000,000 |
| G | | | |
| H | | | |
| I | | | |

75321 (7/00)
CI0980

Page 1 of 2

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

*Archive Copy* Copyright, American International Group, Inc., 2000


Ex. A Pg. 10

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|----------|-----------------------------------|--------------------------------|
| J        |                                   |                                |

**Item 4. POLICY AGGREGATE LIMIT:**      $1,000,000

**Item 5. INSURED PROPERTY(S):**    Heilig Meyers
2930 El Cajon Boulevard
San Diego, CA 92104

**Item 6. POLICY PREMIUM:**      $15,328.00

**Item 7. RETROACTIVE DATE:**  Under Coverages    , the Pollution Conditions must commence on or after the date shown below.

Retroactive Date:          NONE
(Enter date or "none" if no Retroactive Date Applies.)

**Item 8. CONTINUITY DATE:**        01/31/2003

**BROKER:**                ENVIRONMENTAL INSURANCE BROKERAGE SVCS. INC.
226 LOWELL STREET, UNIT B-4A
WILMINGTON, MA 01887

By _____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

75321 (7/00)
CI0980

*Archive Copy*

Copyright, American International Group, Inc., 2000

Ex. A  Pg. 11

**FORMS SCHEDULE**

Named Insured:    CARTER REESE & ASSOCIATES

Policy Number:    PLS   3778106
Effective 12:01 AM:  January 31, 2003

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AISLIC PLS Dec | 75321 | (07/00) |
| | AISLIC PLS Policy Coverage | 76391 | (07/00) |
| | Notice of Loss/Notice of Claim | CI1141 | (09/00) |
| 1 | War Exclusion Endorsement | 79098 | (12/01) |
| 2 | 100% Minimum Earned Premium Endt | 78795 | (09/01) |
| 3 | Microbial Matter Exclusion Endorsement | 78111 | (01/02) |
| 4 | Named Insured Endt | 78791 | (09/01) |
| 5 | Terrorism Excl - All (Incl Cert Acts Of Terrorism) | 81268 | (12/02) |
| 6 | Material Change in Use Exclusion | MNSCPT | (01/03) |
| 7 | Broker of Record Endt | 78781 | (09/01) |

CIFMSC
CI0226          *Archive Copy*

Ex. A Pg. 12

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY
## POLLUTION LEGAL LIABILITY SELECT® POLICY
### TABLE OF CONTENTS

SECTION I. INSURING AGREEMENTS ........................................... 1

   1.    COVERAGES

      COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS ........... 1

      COVERAGE B - ON-SITE CLEAN-UP OF NEW CONDITIONS ................... 1

      COVERAGE C - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY
      AND PROPERTY DAMAGE ........................................... 2

      COVERAGE D - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM
      PRE-EXISTING CONDITIONS ....................................... 2

      COVERAGE E - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM
      NEW CONDITIONS ................................................ 2

      COVERAGE F - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY AND
      PROPERTY DAMAGE .............................................. 2

      COVERAGE G - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY, PROPERTY
      DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS ................. 2

      COVERAGE H - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY
      DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS ................. 2

      COVERAGE I - POLLUTION CONDITIONS RESULTING FROM TRANSPORTED
      CARGO ........................................................ 2

      COVERAGE J - BUSINESS INTERRUPTION COVERAGE - ACTUAL LOSS OR LOSS
      OF RENTAL VALUE .............................................. 3

   2.    LEGAL EXPENSE AND DEFENSE ..................................... 3

   3.    INDEPENDENT COUNSEL ........................................... 3

SECTION II. EXCLUSIONS ...................................................... 4

   1.    COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES ................. 4

   2.    COVERAGE I EXCLUSIONS ......................................... 5

SECTION III. NOTICE REQUIREMENTS AND CLAIM PROVISIONS ....................... 5

   A.    NOTICE OF POLLUTION CONDITIONS, CLAIMS AND AN INTERRUPTION ......... 5

   B.    NOTICE OF POSSIBLE CLAIM ...................................... 6

SECTION IV. RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED IN THE EVENT
OF POLLUTION CONDITIONS .................................................... 6

76391 (7/00)        Copyright, American International Group, Inc. ® 2000      Page 1 of 2
C10868

*Archive Copy*

Ex. A Pg. 13

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

## POLLUTION LEGAL LIABILITY SELECT® POLICY

**MANY OF THE COVERAGES CONTAIN CLAIMS-MADE-AND-REPORTED REQUIREMENTS. PLEASE READ CAREFULLY. ADDITIONALLY, THIS POLICY HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT AND MAY BE DIFFERENT FROM OTHER POLICIES THE INSURED MAY HAVE PURCHASED. DEFINED TERMS, OTHER THAN HEADINGS, APPEAR IN BOLD FACE TYPE.**

**NOTICE: THE DESCRIPTIONS IN ANY HEADINGS OR SUB-HEADINGS OF THIS POLICY ARE INSERTED SOLELY FOR CONVENIENCE AND DO NOT CONSTITUTE ANY PART OF THE TERMS OR CONDITIONS HEREOF.**

In consideration of the payment of the premium, in reliance upon the statements in the Declarations and the Application annexed hereto and made a part hereof, and pursuant to all of the terms of this Policy, the Company agrees with the **Named Insured** as follows:

## I.  INSURING AGREEMENTS

### 1.  COVERAGES:

THE FOLLOWING COVERAGES ARE IN EFFECT ONLY IF SCHEDULED IN THE DECLARATIONS.

### COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS

1. To pay on behalf of the **Insured**, **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced prior to the **Continuity Date**, if such **Pollution Conditions** are discovered by the **Insured** during the **Policy Period**, provided:

   (a) The discovery of such **Pollution Conditions** is reported to the Company in writing as soon as possible after discovery by the **Insured** and in any event during the **Policy Period** in accordance with Section III. of the Policy.

   Discovery of **Pollution Conditions** happens when a **Responsible Insured** becomes aware of **Pollution Conditions**.

   (b) Where required, such **Pollution Conditions** have been reported to the appropriate governmental agency in substantial compliance with applicable **Environmental Laws** in effect as of the date of discovery.

2. To pay on behalf of the **Insured**, **Loss** that the **Insured** is legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced prior to the **Continuity Date**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

### COVERAGE B - ON-SITE CLEAN-UP OF NEW CONDITIONS

1. To pay on behalf of the **Insured**, **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced on or after the **Continuity Date**, if such **Pollution Conditions** are discovered by the **Insured** during the **Policy Period**, provided:

   (a) The discovery of such **Pollution Conditions** is reported to the Company in writing as soon as possible after discovery by the **Insured** and in any event during the **Policy Period** in accordance with Section III. of the Policy.

   Discovery of **Pollution Conditions** happens when a **Responsible Insured** becomes aware of **Pollution Conditions** .

   (b) Where required, such **Pollution Conditions** have been reported to the appropriate governmental agency in substantial compliance with applicable **Environmental Laws** in effect as of the date of discovery.

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

Ex. A Pg. 14

2. To pay on behalf of the Insured, **Loss** that the **Insured** is legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced on or after the **Continuity Date**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE C - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY AND PROPERTY DAMAGE**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** resulting from **Pollution Conditions** on or under the **Insured Property**, if such **Bodily Injury** or **Property Damage** takes place while the person injured or property damaged is on the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE D - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM PRE-EXISTING CONDITIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that commenced prior to the **Continuity Date**, and migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE E - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM NEW CONDITIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that commenced on or after the **Continuity Date**, and migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE F - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY AND PROPERTY DAMAGE**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE G - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** of parties other than the owners, operators or contractors of the **Non-Owned Location**, or their employees, or **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Non-Owned Location**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE H - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury**, **Property Damage** or **Clean-Up Costs** resulting from **Pollution Conditions**, beyond the boundaries of the **Non-Owned Location**, that migrated from the **Non-Owned Location**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE I - POLLUTION CONDITIONS RESULTING FROM TRANSPORTED CARGO**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury**, **Property Damage** or **Clean-Up Costs** resulting from **Pollution Conditions** caused by **Transported Cargo**, provided such **Claims** are first made against the **Insured** and reported to the Company in

Copyright, American International Group, Inc.® 2000

*Archive Copy*

Ex. A  Pg. 15

writing during the Policy Period, or during the Extended Reporting Period if applicable. This coverage shall not be utilized to evidence financial responsibility of any Insured under any federal, state, provincial or local law.

**COVERAGE J - BUSINESS INTERRUPTION COVERAGE - ACTUAL LOSS OR RENTAL VALUE (ONLY AVAILABLE IF COVERAGE A, COVERAGE B OR BOTH COVERAGES A AND B ARE PURCHASED)**

To pay the Insured's Actual Loss or loss of Rental Value, and Extra Expense to the extent it reduces Actual Loss or loss of Rental Value otherwise payable under this coverage section, resulting from an Interruption caused directly by Pollution Conditions on or under the Insured Property. If the Interruption is caused by such Pollution Conditions and any other cause, the Company shall pay only for that portion of Actual Loss or loss of Rental Value, and Extra Expense resulting from an Interruption caused solely and directly by such Pollution Conditions.

1. Such Pollution Conditions must:

   (a) (i) commence prior to the Continuity Date, if the Named Insured has purchased Coverage A, under this Policy; or

      (ii) commence on or after the Continuity Date, if the Named Insured has purchased Coverage B, under this Policy; and

   (b) be first discovered by the Insured during the Policy Period. Discovery of Pollution Conditions happens when a Responsible Insured becomes aware of Pollution Conditions.

2. An Interruption must be reported to the Company, no later than thirty (30) days after its commencement. The Insured shall, as soon as practicable, resume normal operation of the business and dispense with Extra Expense.

3. In determining Actual Loss or loss of Rental Value, the Report/Worksheet annexed to this Policy and made a part of it shall be utilized. If the Insured could reduce the Actual Loss or loss of Rental Value, or Extra Expense resulting from an Interruption:

   (a) by complete or partial resumption of operations; or

   (b) by making use of other property at the Insured Property, or elsewhere,

   such reductions shall be taken into account in arriving at Actual Loss or loss of Rental Value or Extra Expense.

**2. LEGAL EXPENSE AND DEFENSE**

The Company shall have the right and the duty to defend any Claims covered under Coverages A through I provided the Named Insured has purchased such Coverage. The Company's duty to defend or continue defending any such Claim, and to pay any Loss, shall cease once the applicable limit of liability, as described in Section V. LIMITS OF COVERAGE; DEDUCTIBLE has been exhausted. Defense costs, charges and expenses are included in Loss and reduce the applicable limit of liability, as described in Section V., and are included within the Deductible amount for the Coverage Section that applies and is shown in Item 3 of the Declarations.

The Company will present any settlement offers to the Insured, and if the Insured refuses to consent to any settlement within the limits of liability of this Policy recommended by the Company and acceptable to the claimant, the Company's duty to defend the Insured shall cease and the Insured shall thereafter negotiate or defend such Claim independently of the Company and the Company's liability shall not exceed the amount, less the Deductible or any outstanding Deductible balance, for which the Claim could have been settled if such recommendation was consented to.

**3. INDEPENDENT COUNSEL**

In the event the Insured is entitled by law to select independent counsel to defend the Insured at the Company's expense, the attorney fees and all other litigation expenses the Company must pay to that counsel are limited to the rates the Company would actually pay to counsel that the Company retains in the

76391 (7/00)
CI0866                        Copyright, American International Group, Inc.® 2000
                                              3

                    *Archive Copy*

Ex. A Pg. 16

ordinary course of business in the defense of similar **Claims** in the community where the **Claim** arose or is being defended.

Additionally, the Company may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency, including experience in defending **Claims** similar to the one pending against the **Insured**, and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the **Insured** agrees that counsel will timely respond to the Company's request for information regarding the **Claim**. The **Insured** may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

## II. EXCLUSIONS

### 1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES

This Policy does not apply to **Clean-Up Costs, Claims, Loss, Actual Loss, Extra Expense**, or loss of **Rental Value**:

**A. CRIMINAL FINES, PENALTIES, AND ASSESSMENTS:**

Due to any criminal fines, penalties or assessments.

**B. CONTRACTUAL LIABILITY:**

Arising from liability of others assumed by the **Insured** under any contract or agreement, unless the liability of the **Insured** would have attached in the absence of such contract or agreement or the contract or agreement is an **Insured Contract.**

**C. TRANSPORTATION:**

Except with respect to Coverage I, arising out of **Pollution Conditions** that result from the maintenance, use, operation, loading or unloading of any conveyance beyond the boundaries of the **Insured Property.**

**D. INTENTIONAL NONCOMPLIANCE:**

Arising from **Pollution Conditions** based upon or attributable to any **Responsible Insured's** intentional, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

**E. INTERNAL EXPENSES:**

For costs, charges or expenses incurred by the **Insured** for goods supplied or services performed by the staff or salaried employees of the **Insured**, or its parent, subsidiary or affiliate, except if in response to an emergency or pursuant to **Environmental Laws** that require immediate remediation of **Pollution Conditions**, or unless such costs, charges or expenses are incurred with the prior written approval of the Company in its sole discretion.

**F. INSURED vs. INSURED:**

By any **Insured** against any other person or entity who is also an **Insured** under this Policy. This exclusion does not apply to **Claims** initiated by third parties or **Claims** that arise out of an indemnification given by one **Named Insured** to another **Named Insured** in an **Insured Contract** .

**G. ASBESTOS AND LEAD:**

Solely with respect to Coverages A, B, D, E, G, H and J, arising from asbestos or any asbestos-containing materials or lead-based paint installed or applied in, on or to any building or other structure. This exclusion does not apply to **Clean-Up Costs** for the remediation of soil and groundwater.

76391 (7/00)
CI0866

Copyright, American International Group, Inc.® 2000

4

*Archive Copy*

Ex. A Pg. 17

### H. EMPLOYER LIABILITY:

Arising from **Bodily Injury** to an **Insured** or its parent, subsidiary or affiliate arising out of and in the course of employment by the **Insured** or its parent, subsidiary or affiliate. This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity and to any obligation to share damages with or repay third parties who must pay damages because of the injury.

### I. PRIOR KNOWLEDGE/NON-DISCLOSURE:

Arising from **Pollution Conditions** existing prior to the **Inception Date** and known by a **Responsible Insured** and not disclosed in the application for this Policy, or any previous policy for which this Policy is a renewal thereof.

### J. IDENTIFIED UNDERGROUND STORAGE TANK:

Arising from **Pollution Conditions** resulting from an **Underground Storage Tank** whose existence is known by a **Responsible Insured** as of the **Inception Date** and which is located on the **Insured Property** unless such **Underground Storage Tank** is scheduled on the Policy by endorsement.

## 2. COVERAGE I EXCLUSIONS

The following exclusions apply to Coverage I.

This Policy does not apply to **Loss:**

### A. PROPERTY DAMAGE TO CONVEYANCES:

For **Property Damage** to any conveyance utilized during the **Transportation** of **Transported Cargo**. This exclusion does not apply to **Claims** made by third-party carriers of the **Insured** for such **Property Damage** arising from the **Insured's** negligence.

### B. POLLUTION CONDITIONS PRIOR OR SUBSEQUENT TO TRANSPORTATION OF CARGO:

Arising from **Pollution Conditions:**

1. That commence prior to the **Transportation** of **Transported Cargo;** or

2. That commence after **Transported Cargo** reaches its final destination, or while **Transported Cargo** is in storage off-loaded from the conveyance that was transporting it.

### C. THIRD-PARTY CARRIER CLAIMS:

Made by a third-party carrier, its agents or employees, for **Bodily Injury, Property Damage** or **Clean-Up Costs,** whether or not the **Bodily Injury, Property Damage** or **Clean-Up Costs** were directly incurred by such third-party carrier. This exclusion does not apply to **Claims** arising from the **Insured's** negligence.

## III. NOTICE REQUIREMENTS AND CLAIM PROVISIONS

The Insured shall provide the Company with notice of **Pollution Conditions, Claims** or an **Interruption** as follows:

### A. NOTICE OF POLLUTION CONDITIONS, CLAIMS AND AN INTERRUPTION

1. In the event of **Pollution Conditions** or **Claims** under Coverages A through I, or an **Interruption** under Coverage J, the **Insured** shall give written notice to:

   Manager, Pollution Insurance Products Unit
   AIG Technical Services, Inc.
   Environmental Claims Department
   80 Pine Street, Sixth Floor
   New York, New York 10005
   Fax: (212) 344-2761

   or other address(es) as substituted by the Company in writing.

76391 (7/00)
CI0866

Copyright, American International Group, Inc.® 2000
5

*Archive Copy*

EX. A PG. 18

2. The Insured shall give written notice of Pollution Conditions as soon as possible. Notice under all coverages shall include, at a minimum, information sufficient to identify the Named Insured, the Insured Property, the names of persons with knowledge of the Pollution Conditions and all known and reasonably obtainable information regarding the time, place, cause, nature of and other circumstances of the Pollution Conditions.

3. The Insured shall give notice of Claims as soon as possible, but in any event during the Policy Period or during the Extended Reporting Period, if applicable. The Insured shall furnish information at the request of the Company. When a Claim has been made, the Insured shall forward the following to the Company as soon as possible:

(a) All reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the claimant(s) and available witnesses.

(b) All demands, summonses, notices or other process or papers filed with a court of law, administrative agency or an investigative body.

(c) Other information in the possession of the Insured or its hired experts which the Company reasonably deems necessary.

**B. NOTICE OF POSSIBLE CLAIM**

1. If during the Policy Period, the Insured first becomes aware of a Possible Claim, the Insured may provide written notice to the Company during the Policy Period containing all the information required under Paragraph 2. below. Any Possible Claim which subsequently becomes a Claim made against the Insured and reported to the Company within five (5) years after the end of the Policy Period of this Policy or any continuous, uninterrupted renewal thereof, shall be deemed to have been first made and reported during the Policy Period of this Policy. Such Claim shall be subject to the terms, conditions and limits of coverage of the policy under which the Possible Claim was reported.

2. It is a condition precedent to the coverage afforded by this Section III. B that written notice under Paragraph 1. above contain all of the following information: (a) the cause of the Pollution Conditions; (b) the Insured Property or other location where the Pollution Conditions took place; (c) the Bodily Injury, Property Damage or Clean-Up Costs which has resulted or may result from such Pollution Conditions; (d) the Insured(s) which may be subject to the Claim and any potential claimant(s); (e) all engineering information available on the Pollution Conditions and any other information that the Company deems reasonably necessary; and (f) the circumstances by which and the date the Insured first became aware of the Possible Claim.

**IV. RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED IN THE EVENT OF POLLUTION CONDITIONS**

**A. The Company's Rights**

The Company shall have the right but not the duty to clean up or mitigate Pollution Conditions upon receiving notice as provided in Section III. of this Policy. Any sums expended in taking such action by the Company will be deemed incurred or expended by the Insured and shall be applied against the limits of coverage and deductible under this Policy.

**B. Duties of the Insured**

The Named Insured shall have the duty to clean up Pollution Conditions to the extent required by Environmental Law, by retaining competent professional(s) or contractor(s) mutually acceptable to the Company and the Named Insured. The Company shall have the right  but not the duty to review and approve all aspects of any such clean-up. The Named Insured shall notify the Company of actions and measures taken pursuant to this paragraph.

76391 (7/00)
CI0866

Copyright, American International Group, Inc.® 2000

6

*Archive Copy*

Ex. A  Pg. 19

## V.  LIMITS OF COVERAGE; DEDUCTIBLE

Regardless of the number of **Claims**, claimants, **Pollution Conditions** or **Insureds** under this **Policy**, the following limits of liability apply:

### A.  Policy Aggregate Limit

The **Company's** total liability for all **Loss**, under Coverages A through I, and all **Actual Loss**, loss of **Rental Value** and **Extra Expense** under Coverage J, shall not exceed the "Policy Aggregate" stated in Item 4 of the Declarations. The **Company's** internal expenses do not erode the limit of liability available for any **Loss**.

### B.  Each Incident Limit - Coverages A Through I

1.  Subject to Paragraph V.A. above, the most the **Company** will pay for all **Loss** under each Coverage in Coverages A through I arising from the same, related or continuous **Pollution Conditions** is the "Each Incident" limit of coverage for that particular coverage stated in Item 3 of the Declarations.

2.  If the **Insured** first discovers **Pollution Conditions** during the **Policy Period** and reports them to the **Company** in accordance with Section III., all continuous or related **Pollution Conditions** reported to the **Company** under a subsequent Pollution Legal Liability Policy issued by the **Company** or its affiliate providing substantially the same coverage as this **Policy** shall be deemed to have been first discovered and reported during the **Policy Period**.

3.  If a **Claim** for **Bodily Injury**, **Property Damage**, or **Clean-Up Costs** is first made against the **Insured** and reported to the **Company** during the **Policy Period**, all **Claims** for **Bodily Injury**, **Property Damage** or **Clean-Up Costs**, arising from the same, continuous or related **Pollution Conditions** that are first made against the **Insured** and reported under a subsequent Pollution Legal Liability Policy issued by the **Company** or its affiliate providing substantially the same coverage as this **Policy**, shall be deemed to have been first made and reported during the **Policy Period**. Coverage under this **Policy** for such **Claims** shall not apply, however, unless at the time such **Claims** are first made and reported, the **Insured** has maintained with the **Company** or its affiliate Pollution Legal Liability coverage substantially the same as this coverage on a continuous, uninterrupted basis since the first such **Claim** was made against the **Insured** and reported to the **Company**.

### C.  Coverage Section Aggregate Limit

Subject to Paragraph V. A. above, the **Company's** total liability for all **Loss** under each Coverage in Coverages A through I, shall not exceed the "Coverage Section Aggregate" limit of coverage for that particular coverage stated in Item 3 of the Declarations.

### D.  Maximum for All Business Interruption

Subject to Paragraph V. A. above, the maximum amount for which the **Company** is liable for all **Actual Loss** or loss of **Rental Value**, and **Extra Expense** under Coverage J is 80% of the lesser of:

1.  The **Actual Loss** and **Extra Expense**, or loss of **Rental Value** and **Extra Expense**, whichever is applicable, incurred during the number of days of interruption of business stated in Item 3 of the Declarations; and

2.  The amount stated in Item 3 of the Declarations.

It is a condition of Coverage J that the remaining 20% of such amount be borne by the **Insured** at its own risk and remain uninsured.

### E.  Multiple Coverages

Subject to Paragraph V. A. above, if the same, related or continuous **Pollution Conditions** result in coverage under more than one Coverage under Coverages A through J, every applicable "Each Incident," "Coverage Section Aggregate," and "Maximum for All Business Interruption" limit of coverage

76391 (7/00)
CI0866

Copyright, American International Group, Inc.® 2000

7

*Archive Copy*

Ex. A Pg. 20

among such coverage sections shall apply to the **Clean-Up Costs, Loss, Actual Loss and Extra Expense,** or loss of **Rental Value** and **Extra Expense,** whichever is applicable, resulting from such **Pollution Conditions.**

F. **Deductible**

    1. **Coverages A through I**

        Subject to Paragraphs V. A. through V.E. above, this **Policy** is to pay covered **Loss** in excess of the **Deductible** amount stated in Item 3 of the Declarations for the applicable coverage, up to but not exceeding the applicable "Each Incident" limit of coverage.

        If the same, related or continuous **Pollution Conditions** result in coverage under more than one coverage section in **Coverages A through I,** only the highest **Deductible** amount stated in Item 3 of the Declarations among all the coverage sections applicable to the **Loss** will apply.

        The **Insured** shall promptly reimburse the Company for advancing any element of **Loss** falling within the **Deductible.**

    2. **Coverage J**

        Subject to Paragraphs V.A. through V.E. above, this **Policy** is to pay the **Actual Loss** or loss of **Rental Value,** and **Extra Expense** under **Coverage J** in excess of the **Actual Loss** or loss of **Rental Value,** and **Extra Expense** sustained during the first seven (7) days of an **Interruption** during the **Period of Restoration.** The seven (7) day period applies to all **Actual Loss,** or loss of **Rental Value,** and **Extra Expense** arising from the same, related or continuous **Pollution Conditions.**

## VI. CONDITIONS

A. **Assignment** - This **Policy** may be assigned with the prior written consent of the Company, which consent shall not be unreasonably withheld or delayed. Assignment of interest under this **Policy** shall not bind the Company until its consent is endorsed thereon.

B. **Subrogation** - In the event of any payment under this **Policy,** the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assignment of the **Insured's** rights against any person or organization who caused **Pollution Conditions** on account of which the Company made any payment under this **Policy.** The **Insured** shall do nothing to prejudice the Company's rights under this paragraph subsequent to **Loss.** Any recovery as a result of subrogation proceedings arising out of the payment of **Loss** covered under this **Policy** shall accrue first to the **Insured** to the extent of any payments in excess of the limit of coverage; then to the Company to the extent of its payment under the Policy; and then to the **Insured** to the extent of its **Deductible.** Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

C. **Cooperation** - The **Insured** shall cooperate with the Company and offer all reasonable assistance in the investigation and defense of **Claims** under the applicable Coverages purchased. The Company may require that the **Insured** submit to examination under oath, and attend hearings, depositions and trials. In the course of investigation or defense, the Company may require written statements or the **Insured's** attendance at meetings with the Company. The **Insured** must assist the Company in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses.

D. **Changes** - Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this **Policy** or estop the Company from asserting any rights under the terms of this **Policy;** nor shall the terms of this **Policy** be waived or changed, except by endorsement issued to form a part of this **Policy.**

76391 (7/00)  
CI0886         Copyright, American International Group, Inc.® 2000

*Archive Copy*

Ex. _A_ Pg. _21_

E. **Voluntary Payments** - No Insured shall voluntarily enter into any settlement, or make any payment or assume any obligation unless in response to an emergency or pursuant to Environmental Laws that require immediate remediation of Pollution Conditions, without the Company's consent which shall not be unreasonably withheld, except at the Insured's own cost.

F. **Concealment or Fraud** - This entire Policy shall be void if, whether before or after Clean-Up Costs are incurred or a Claim is first made, the Named Insured has willfully concealed or misrepresented any fact or circumstance material to the granting of coverage under this Policy, the description of the Insured Property, or the interest of the Insured therein.

G. **Cancellation** - This Policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company only for the reasons stated below by mailing to the Named Insured at the address shown in the Policy, written notice stating when not less than 60 days (10 days for nonpayment of premium) thereafter such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

1. Material misrepresentation by the Insured;

2. The Insured's failure to comply with the material terms, conditions or contractual obligations under this Policy, including failure to pay any premium or Deductible when due;

3. A change in operations at an Insured Property during the Policy Period that materially increases a risk covered under this Policy.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro-rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

H. **Other Insurance** - Where other insurance may be available for Loss, Actual Loss or loss of Rental Value, and Extra Expense covered under this Policy, the Insured shall promptly upon request of the Company provide the Company with copies of all such policies. If other valid and collectible insurance is available to the Insured for Loss Actual Loss or loss of Rental Value, and Extra Expense covered by this Policy, the Company's obligations are limited as follows:

1. This insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the Company will share with all such other insurance by the method described in Paragraph 2. below.

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

I. **Right of Access and Inspection** - To the extent the Insured has such rights, any of the Company's authorized representatives shall have the right and opportunity but not the obligation to interview persons employed by the Insured and to inspect at any reasonable time, during the Policy Period or thereafter, the Insured Property. Neither the Company nor its representatives shall assume any responsibility or duty to the Insured or to any other party, person or entity, by reason of such right or inspection. Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon shall constitute an undertaking on behalf of the Insured or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practices or are in compliance with any law, rule or regulation. The Named Insured agrees to provide appropriate personnel to assist the Company's representatives during any inspection.

76391 (7/00)
CI0886

Copyright, American International Group, Inc.® 2000

9

*Archive Copy*

Ex. A Pg. 22

**J. Access to Information** - The Named Insured agrees to provide the Company with access to any information developed or discovered by the Insured concerning Loss covered under this Policy, whether or not deemed by the Insured to be relevant to such Loss and to provide the Company access to interview any Insured and review any documents of the Insured.

**K. Representations** - By acceptance of this Policy, the Named Insured agrees that the statements in the Declarations, the Application and the Report/Worksheet are their agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the Insured and the Company or any of its agents relating to this insurance.

**L. Action Against Company** - No third-party action shall lie against the Company, unless as a condition precedent thereto there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by the Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

**M. Arbitration** - It is hereby understood and agreed that all disputes or differences that may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss, may be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

Any party may commence such arbitration proceeding and the arbitration shall be conducted in the Insured's state of domicile. The arbitrators shall give due consideration to the general principles of the law of the Insured's state of domicile in the construction and interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions and exclusions of this Policy are to be construed in an evenhanded fashion as between the parties. Where the language of this Policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy (without regard to the authorship of the language, the doctrine of reasonable expectation of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties).

The written decision of the arbitrators shall set forth its reasoning, shall be provided simultaneously to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs. Judgment on the award may be entered in any court of competent jurisdiction. Each party shall bear equally the expenses of the arbitration.

**N. Service Of Suit** - Subject to Paragraph M. above, it is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street, New York, New York 10270, or his or her representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

76391 (7/00)
CI0866

Copyright, American International Group, Inc.® 2000

*Archive Copy*

Ex. A Pg. 23

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

O. **Acknowledgment of Shared Limits** - By acceptance of this Policy, the Named Insureds understand, agree and acknowledge that the Policy contains a Policy Aggregate Limit that is applicable to, and will be shared by, all Named Insureds and all other Insureds who are or may become insured hereunder. In view of the operation and nature of this shared Policy Aggregate Limit, the Named Insureds and all other Insureds understand and agree that prior to filing a Claim under the Policy, the Policy Aggregate Limit may be exhausted or reduced by prior payments for other Claims under the Policy.

P. **Separation of Insureds** - It is hereby agreed that except with respect to the Limit of Liability, Section II. F. (Insured vs. Insured exclusion), and any rights and duties specifically assigned to the first Named Insured, this insurance applies: 1. As if each Named Insured were the only Named Insured; and 2. Separately to each Named Insured against who a Claim is made. Misrepresentation, concealment, breach of a term or or condition, or violation of any duty under this Policy by one Named Insured shall not prejudice the interest of coverage for another Named Insured under this Policy. Provided, however, that this Condition shall not apply to any Named Insured who is a parent, subsidiary or affiliate of the first Named Insured.

## VII. EXTENDED REPORTING PERIOD FOR CLAIMS - COVERAGES A THROUGH I

The Named Insured shall be entitled to an Automatic Extended Reporting Period, and (with certain exceptions as described in Paragraph B. of this Section) be entitled to purchase an Optional Extended Reporting Period for Coverages A through I collectively, upon termination of coverage as defined in Paragraph B.3. of this Section. Neither the Automatic nor the Optional Extended Reporting Period shall reinstate or increase any of the limits of liability of this Policy.

A. **Automatic Extended Reporting Period**

Provided that the Named Insured has not purchased any other insurance to replace this insurance and which applies to a Claim otherwise covered hereunder, the Named Insured shall have the right to the following: a period of sixty (60) days following the effective date of such termination of coverage in which to provide written notice to the Company of Claims first made and reported within the Automatic Extended Reporting Period.

A Claim first made and reported within the Automatic Extended Reporting Period will be deemed to have been made on the last day of the Policy Period, provided that the Claim arises from Pollution Conditions that commenced before the end of the Policy Period and is otherwise covered by this Policy. No part of the Automatic Extended Reporting Period shall apply if the Optional Extended Reporting Period is purchased.

B. **Optional Extended Reporting Period**

The Named Insured shall be entitled to purchase an Optional Extended Reporting Period upon termination of coverage as defined herein (except in the event of nonpayment of premium), as follows:

1. A Claim first made and reported within the Optional Extended Reporting Period, if purchased in accordance with the provisions contained in Paragraph 2. below, will be deemed to have been made on the last day of the Policy Period, provided that the Claim arises from Pollution Conditions that commenced before the end of the Policy Period and is otherwise covered by this Policy.

2. The Company shall issue an endorsement providing an Optional Extended Reporting Period of up to forty (40) months from termination of coverage hereunder for all Insured Properties and Non-Owned Locations, if applicable, or any specific Insured Property or Non-Owned Location, provided that the Named Insured:

Copyright, American International Group, Inc.® 2000
11

*Archive Copy*

Ex. A Pg. 24

(a) makes a written request for such endorsement which the Company receives within thirty (30) days after termination of coverage as defined herein; and

(b) pays the additional premium when due. If that additional premium is paid when due, the **Extended Reporting Period** may not be cancelled, provided that all other terms and conditions of the Policy are met.

3. Termination of coverage occurs at the time of cancellation or nonrenewal of this Policy by the **Named Insured** or by the Company, or at the time of the Company's deletion of a location which previously was an **Insured Property** or **Non-Owned Location**.

4. The Optional Extended Reporting Period is available to the **Named Insured** for not more than 200% of the full Policy premium stated in the Declarations.

## VIII. DEFINITIONS

A. **Actual Loss** means the:

1. Net income (net profit or loss before income taxes) the **Insured** would have earned or incurred had there been no **Interruption**; and

2. Continuing normal operating expenses incurred, including **Ordinary Payroll Expense**.

B. **Bodily Injury** means physical injury, or sickness, disease, mental anguish or emotional distress, sustained by any person, including death resulting therefrom.

C. **Claim** means a written demand received by the **Insured** seeking a remedy or alleging liability or responsibility on the part of the **Insured** for **Loss** under **Coverages A through I**. For purposes of this Policy, a **Claim** does not include a **Possible Claim** that was reported under a prior policy but which has become a **Claim** during the **Policy Period** of this Policy as described in Section III. B.

D. **Clean-Up Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent which consent shall not be unreasonably withheld or delayed, for the investigation, removal, remediation including associated monitoring, or disposal of soil, surfacewater, groundwater or other contamination:

1. To the extent required by **Environmental Laws**; or

2. That have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties.

**Clean-Up Costs** also include **Restoration Costs**.

E. **Continuity Date** means the date stated in Item 8 of the Declarations.

F. **Environmental Laws** means any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions**.

G. **Extended Reporting Period** means either the automatic additional period of time or the optional additional period of time, whichever is applicable, in which to report **Claims** following termination of coverage, as described in Section VII. of this Policy.

H. **Extra Expense** means necessary expenses the **Insured** incurs during the **Period of Restoration**:

1. That would not have been incurred if there had not been an **Interruption**; and

2. That avoid or minimize an **Interruption**,

but only to the extent such expenses reduce **Actual Loss** or loss of **Rental Value**, whichever is applicable, otherwise covered under this Policy.

76391 (7/00)
CI0866
Copyright, American International Group, Inc.® 2000
12

*Archive Copy*

Ex. A Pg. 25

Extra Expense will be reduced by any salvage value of property obtained for temporary use during the Period of Restoration that remains after the resumption of normal operations.

I. **Inception Date** means the first date set forth in Item 2 of the Declarations.

J. **Insured** means the Named Insured, and any past or present director, officer, partner or employee thereof, including a temporary or leased employee, while acting within the scope of his or her duties as such.

K. **Insured Contract** means a contract or agreement submitted to and approved by the Company, and listed on an Endorsement to this Policy.

L. **Insured Property** means each of the locations identified in Item 5 of the Declarations.

M. **Interruption** means the necessary suspension of the Insured's business operations at an Insured Property during the Period of Restoration.

N. **Loss** means, under the applicable Coverages:

   1. Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damages; and civil fines, penalties, or assessments for **Bodily Injury** or **Property Damage;**

   2. Costs, charges and expenses incurred in the defense, investigation or adjustment of **Claims** for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments, or for **Clean-Up Costs;** or

   3. **Clean-Up Costs.**

O. **Named Insured** means the person or entity named in Item 1 of the Declarations acting on behalf of all other Insureds, if any, for the payment or return of any premium, payment of any deductible, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the Extended Reporting Period clause.

P. **Natural Resource Damage** means physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. 1801 et seq.)), any state or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

Q. **Non-Owned Location** means a site that is not owned or operated by the Named Insured, and that is identified in a Non-Owned Covered Locations Schedule attached to and made a part of this Policy by endorsement.

R. **Ordinary Payroll Expense** means the entire payroll expense for all employees of the Insured, except officers, executives, department managers and employees under contract.

S. **Period of Restoration** means the length of time as would be required with the exercise of due diligence and dispatch to restore the Insured Property to a condition that allows the resumption of normal business operations, commencing with the date operations are interrupted by **Pollution Conditions** and not limited by the date of expiration of the **Policy Period.** The **Period of Restoration** does not include any time caused by the interference by employees or other persons with restoring the property, or with the resumption or continuation of operations.

T. **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

   1. Cancellation of this Policy; or

76391 (7/00)
C10866

Copyright, American International Group, Inc.® 2000

13

*Archive Copy*

Ex. A Pg. 26

2. With respect to particular **Insured Property(s)** or **Non-Owned Location(s)** designated in the Declarations, the deletion of such location(s) from this Policy by the Company at the **Named Insured's** written request, but solely with respect to that **Insured Property** or **Non-Owned Location.**

U. **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered.

V. **Possible Claim** means **Pollution Conditions** that commenced on or after the **Inception Date** that the **Insured** reasonably expects may result in a **Claim.**

W. **Property Damage** means:

1. Except with respect to Coverage C, physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use and diminution in value thereof;

2. Loss of use, but not diminution in value, of tangible property of parties other than the **Insured** that has not been physically injured or destroyed;

3. Solely with respect to Coverage C, physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use thereof; and

4. **Natural Resource Damage.**

**Property Damage** does not include **Clean-Up Costs.**

X. **Rental Value** means the:

1. Total anticipated rental income from tenant occupancy of the **Insured Property** as furnished and equipped by the **Insured**;

2. Amount of all charges that are the legal obligation of the tenant(s) pursuant to a lease and that would otherwise be the **Insured's** obligations; and

3. Fair rental value of any portion of the **Insured Property** that is occupied by the **Insured** during the **Period of Restoration**, less any rental income the **Insured** could earn:

   (a) by complete or partial rental of the **Insured Property**, or

   (b) by making use of other property on the **Insured Property** or elsewhere.

Y. **Responsible Insured** means the manager or supervisor of the **Named Insured** responsible for environmental affairs, control or compliance, or any manager of the **Insured Property**, or any officer, director or partner of the **Named Insured.**

Z. **Restoration Costs** means reasonable and necessary costs incurred by the **Insured** with the Company's written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **Clean-Up Costs**. However, such **Restoration Costs** shall not exceed the net present value of such property prior to incurring **Clean-Up Costs. Restoration Costs** do not include costs associated with improvements or betterments.

AA. **Transportation** means the movement of **Transported Cargo** by a conveyance, from the place where it is accepted by a carrier until it is moved:

1. To the place where the carrier finally delivers it; or

2. In the case of waste, to a waste disposal facility to which the carrier delivers it.

76391 (7/00)
C10866

Copyright, American International Group, Inc.® 2000
14

*Archive Copy*

Ex. A Pg. 27

Transportation includes the carrier's loading or unloading of **Transported Cargo** onto or from a conveyance provided that the loading or unloading is performed by or on behalf of the **Named Insured**.

BB. **Transported Cargo** means goods, products, or waste transported for delivery by a carrier properly licensed to transport such goods, products, or waste.

CC. **Underground Storage Tank** means any tank that has at least ten (10) percent of its volume below ground in existence at the **Inception Date**, or installed thereafter, including associated underground piping connected to the tank.

---

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its president and secretary and signed on the Declarations page by a duly authorized representative or countersigned in states where applicable.

_Elizabeth M. Tuck_
SECRETARY

_L. H. Lilley_
PRESIDENT

76391 (7/00)
CI0866

Copyright, American International Group, Inc.® 2000
15

*Archive Copy*

Ex. A Pg. 28

AIG ENVIRONMENTAL

## NOTICE OF LOSS/NOTICE OF CLAIM

INSTRUCTIONS:  PLEASE ATTACH ALL CORRESPONDENCE RELATING TO THIS NOTICE OF LOSS AND MAIL COPIES OF THIS NOTICE TO THE ADDRESS BELOW:

Manager, Pollution Insurance Products Unit
AIG Technical Services, Inc.
Environmental Claims Department
80 Pine Street, 6th Floor
New York, NY 10006

Date of Notice: _____

NAMED INSURED: CARTER REESE & ASSOCIATES

ADDRESS OF      3638 5TH AVENUE, SUITE 300
INSURED:        SAN DIEGO, CA 92103

TELEPHONE: (    ) _____

CONTACT: _____

BROKER NAME:   ENVIRONMENTAL INSURANCE BROKERAGE SVCS. INC.

BROKER          226 LOWELL STREET, UNIT B-4A
ADDRESS:        WILMINGTON, MA 01887

TELEPHONE: (    ) _____

CONTACT: _____

POLICY INFORMATION:
Policy Number: PLS  3778106
Policy Period: From: January 31, 2003          To: January 31, 2008

Loss Information:
Loss Location: _____

_____

Date & Description of Loss: _____

_____

_____

_____

_____

For AIG Use Only:
Date Claim Notice Received: _____
Date of Claim: _____
Company/Person Filing Suit (if applicable): _____

NOTE: Any person who knowingly files a Statement of Claim containing any false or misleading information is subject to criminal and civil penalties.

CI1141 (09/00)        *Archive Copy*

Ex. A  Pg. 29

## ENDORSEMENT NO. 1

This endorsement, effective 12:01 AM, January 31, 2003

Forms a part of Policy No: PLS  3778106

Issued to:  CARTER REESE & ASSOCIATES

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WAR EXCLUSION ENDORSEMENT

It is hereby agreed that the following exclusion is added to Section II. EXCLUSIONS, Subsection 1. COMMON EX-CLUSIONS - APPLICABLE TO ALL COVERAGES:

**WAR**

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

PAGE 1 OF 1

79098 (12/01)
CI1625

*Archive Copy*

Ex. A  Pg. 30

## ENDORSEMENT NO. 2

**This endorsement, effective 12:01 AM, January 31, 2003**

**Forms a part of Policy No: PLS   3778106**

**Issued to:  CARTER REESE & ASSOCIATES**

**By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### 100% MINIMUM EARNED PREMIUM ENDORSEMENT

1. It is hereby agreed that the following minimum earned premium applies:

   **Inception Date        Minimum Premium Earned    100 %**

2. It is hereby agreed that Section VI. CONDITIONS, Paragraph G., Cancellation is deleted in its entirety and replaced with the following:

   G. **Cancellation** - This Policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.  This Policy may be cancelled by the Company only for the reasons stated below by mailing to the Named Insured at the address shown in the Policy, written notice stating when not less than 60 days (10 days for nonpayment of premium) thereafter such cancellation shall be effective.  Proof of mailing of such notice shall be sufficient proof of notice.

      1. Material misrepresentation by the Insured;

      2. The Insured's failure to comply with the material terms, conditions or contractual obligations under this Policy, including failure to pay any premium or Deductible when due;

      3. A change in operations at an Insured Property during the Policy Period that materially increases a risk covered under this Policy.

   The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Policy Period.  Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, no return premium will be calculated and the premium shall be 100% earned at the Inception Date.  If the Company cancels, earned premium shall be computed on a pro rata basis. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

All other terms, conditions and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

78795 (9/01)
CI1613

*Archive Copy*

PAGE 1 OF 1

Ex. A Pg. 31

**ENDORSEMENT NO. 3**

This endorsement, effective 12:01 AM, January 31, 2003

Forms a part of Policy No: PLS   3778106

Issued to:  CARTER REESE & ASSOCIATES

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MICROBIAL MATTER EXCLUSION ENDORSEMENT**

It is hereby agreed as follows:

1.  Section VIII., DEFINITIONS, Paragraph U. is deleted in its entirety and replaced with the following:

    U.  **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts and concentrations discovered. **Pollution Conditions** shall not include **Microbial Matter.**

    The following is added to Section VIII., DEFINITIONS, as Paragraph DD., Microbial Matter.

    DD. **Microbial Matter** means fungi, bacterial or viral matter which reproduces through the release of spores or the splitting of cells or other means, including but not limited to, mold, mildew and viruses, whether or not such **Microbial Matter** is living.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

78111 (1/02)
CI1657

*Archive Copy*

PAGE 1 OF 1

Ex. _A_ Pg. _32_

## ENDORSEMENT NO. 4

This endorsement, effective 12:01 AM, January 31, 2003

Forms a part of Policy No: PLS   3778106

Issued to:   CARTER REESE & ASSOCIATES

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NAMED INSURED ENDORSEMENT

It is hereby agreed that Section VIII., **DEFINITIONS**, Paragraph O. Named Insured is deleted in its entirety and replaced with the following:

O. **Named Insured** means the person or entity named in Item 1. of the Declarations acting on behalf of all other **Insureds**, if any, for the payment or return of any premium, payment of any deductible, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the **Extended Reporting Period** clause.

Furthermore, it is hereby agreed that the following entity(s) are included as **Named Insureds** but solely as respects liability arising out of the ownership, operation, maintenance or use of the Insured Property(s) designated in Item 5. of the Declarations. The first **Named Insured**, previously designated in Item 1. of the Declarations shall remain unchanged as such.

### NAMED INSURED(S)

Wells Fargo Bank Minnesota, N.A., Formerly Known As Norwest Bank Minnesota
National Association, as Trustee for the Registered Holders of First Union
National Banker Commercial Trust, Commercial Mortgage Pass-Through Certificates,
Series 200-C1
KeyBank Real Estate Capital, Inc., Formerly Known As KeyCorp Real Estate Capital
Markets, Inc. as Authorized Agent

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

78791 (9/01)                                                                      **PAGE 1 OF 1**
CI1609

*Archive Copy*

Ex. A Pg. 33

## ENDORSEMENT NO. 5

This endorsement, effective 12:01 AM, January 31, 2003

Forms a part of Policy No:  PLS    3778106

Issued to:  CARTER REESE & ASSOCIATES

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

~~TERRORISM EXCLUSION - ALL TERRORISM (INCLUDING CERTIFIED ACTS OF TERRORISM)~~
### EXCLUSION ENDORSEMENT

Pursuant to the requirements of the Terrorism Risk Insurance Act of 2002, the "Act," the Insured has been provided notice that the Insured may elect to purchase coverage for loss covered under this Policy arising directly or indirectly as a result of a certified "act of terrorism" as defined by Section 102. Definitions, of the Act and any revisions or amendments thereto and the premium charge for such coverage.

After receiving such notice, the Insured has elected not to purchase coverage for such certified "acts of terrorism" and has agreed to the inclusion of a Terrorism Exclusion. Therefore, this Policy is amended to include the following exclusion:

The Company has no obligation to make any payment or to provide or to pay for a defense under this Policy due to or arising directly or indirectly as a result of or in connection with Terrorism including but not limited to, any contemporaneous or ensuing loss caused by fire, looting, or theft.

Terrorism means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

The defined term Terrorism shall specifically include, but is not limited to, the following definition of a certified "Act of Terrorism" defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments thereto:

(1) Act of Terrorism -
    (A) Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States -
        (i) to be an act of terrorism;
        (ii) to be a violent act or an act that is dangerous to -
            (I) human life;
            (II) property; or
            (III) infrastructure;
        (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
            (I) an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];
            (II) the premises of a United States mission; and

Archive Copy

PAGE 1 OF 2


Ex. A Pg. 34

**ENDORSEMENT NO. 5 (Continued)**

    (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

(B) Limitation. - No act shall be certified by the Secretary as an act of terrorism if -

    (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

    (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C) Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

FOR USE TO EXCLUDE ALL TERRORISM/REJECTION OF CERTIFIED ACTS OF TERRORISM.

*Archive Copy*

Ex. A   Pg. 35

**ENDORSEMENT NO.6**

This endorsement, effective 12:01 AM:  January 31, 2003

Forms a part of policy no.: PLS  3778106

Issued to:  CARTER REESE & ASSOCIATES

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MATERIAL CHANGE IN USE OF INSURED PROPERTY(S) EXCLUSION**

1. It is hereby agreed that the following exclusion is added to Section II. EXCLUSIONS, 1., COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES:

**MATERIAL CHANGE IN USE:**

arising from a material change in use of the **Insured Property(s)**.

2. It is hereby agreed by the Company that the contemplated redevelopment of the **Insured Property** from it's current use and operation to a mixed use and operation, including retail and residential does not constitute a change in operations of the **Insured Property** which materially increases the risk under Section VI. G. 3, and does not constitute a material change in use of the **Insured Property**.

All other terms, conditions and exclusions remain the same.

_____
**Authorized Representative
or countersignature (where required by law)**

*Archive Copy*

Ex. A Pg. 36

## ENDORSEMENT NO. 7

**This endorsement, effective 12:01 AM, January 31, 2003**

**Forms a part of Policy No:** PLS   3778106

**Issued to:**  CARTER REESE & ASSOCIATES

**By:**  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### BROKER OF RECORD ENDORSEMENT

It is hereby agreed that the **BROKER** identified on Page 2. of the Declarations is deleted in its entirety and replaced with the following as of the date stated below:

**BROKER:**  Crawley Warren Insurance Services, Inc.
100 California Street, Suite 670
San Francisco, CA 94111

Date of Broker change:  01/31/2003

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

78781 (9/01)                                            **PAGE 1 OF 1**
CI1599

*Archive Copy*

Ex. A Pg. 37

# POLICY COVER PAGE

**Date Printed:**  02/24/03                          **Policy/Quote Number:**  3778106
**Time Printed:**  000001

---

**Underwriter Name:**          MICHAEL GILL
**Issuing Office Division:**
**Issuing Office Branch:**      0004
**Issuing Office Region:**
**Operator Name:**             HIGGINS            ,DIANA
**Operator Telephone:**        617-457-2700
**Policy Effective Date:**     January 31, 2003

**Transaction Type:**          NB

**Set Copy Name:**
**Set Copy Mailing Instructions:**

**EPS TRACKING-ID:**   0000744415000003055
**JOB-ID:**

(Ed. 4-99)          *Archive Copy*

Ex. A Pg. 38

 **AIG Environmental**
A Division of American International Companies®

99 HIGH STREET

BOSTON, MA 02110

February 24, 2003

Cass Alimonit
Crawley Warren Insurance Services, Inc.
100 California Street, Suite 670
San Francisco, CA 94111

Re: Insured:    CARTER REESE & ASSOCIATES
                01/31/2003-01/31/2008
    Policy No:  PLS   3778106

Dear Cass:

Enclosed is the original policy and 1 copy(s) for the captioned account.

I have also enclosed the Pier II information that must be forwarded to the Insured along with the original policy.

If you have any questions, please feel free to contact me.

Sincerely,

Diana Higgins
Service Specialist
Boston Regional Service Center

CI1331
(2/01)

*Archive Copy*

Ex. A Pg. 39





# AIG Environmental
**A Division of American International Companies®**

99 HIGH STREET

BOSTON, MA 02110

February 5, 2003

ENVIRONMENTAL INSURANCE BROKERAGE SVCS. INC.
226 LOWELL STREET, UNIT B-4A
WILMINGTON, MA 01887

**Re: Insured:** CARTER REESE & ASSOCIATES

**Policy No:** PLS  3778106

Dear  :

Enclosed is the original policy and    copy(s) for the captioned account.

As of today's date we have not received the following information requested on the binder letter:

Please follow up with the insured and advise me of the status as soon as possible.

I have also enclosed the Pier II information that must be forwarded to the insured along with the original policy.

If you have any questions, please feel free to contact me.

Sincerely,


MICHAEL GILL

CI1332
(2/01)

*Archive Copy*

Ex. A Pg. 40

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

American International Specialty Lines Insurance Company

## DEFENDANTS

Heilig-Meyers Company, a Virginia Corporation; McMahan Furniture Company, a California Corporation; and DOES 1 through 10, inclusive

FILED

07 DEC 19 PM 12: 03

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY KWT

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Thomas F. Vandenburg, Esq.
Dongell Lawrence Finney LLP
707 Wilshire Blvd., 45th Floor
Los Angeles, CA 90017
Telephone: (213) 943-6100

ATTORNEYS (IF KNOWN)

'07 CV 2377 JLS POR

BY FAX

## II. BASIS OF JURISDICTION  (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES  (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION  (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
42 U.S.C. § 9601, et seq.
CERCLA - Land Contamination

## V. NATURE OF SUIT  (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removal from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S)
IF ANY
(See instructions):
JUDGE _____  Docket Number _____

DATE  December 19, 2007

SIGNATURE OF ATTORNEY OF RECORD

PAID $350 - 12/19/07 BH RCPT# 145718

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

ORIGINAL

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 145718   — BH

December 19, 2007
12:03:54

## Civ Fil Non-Pris
USAO #.: 07CV2377 CIVIL FILING
Judge..: JANIS L. SANMARTINO
Amount.:                    $350.00 CK
Check#.: BC# 65321

Total—>  $350.00

FROM: CIVIL FILING
      AMERICAN INT'L SPCLTY LINES
      INS. CO V. HEILIG MEYERS CO.